IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JAMES J. DOYLE and : 
JOAN E. DOYLE, h/w
    Plaintiffs,
:     CIVIL NO. 08-4273
  v.

SOUTHEASTERN PENNSYLVANIA :
TRANSPORTATION AUTHORITY
    Defendant.

**MEMORANDUM**

**JONES, J.**                                                                    January 13, 2010

**I.**     **Introduction**

The above-captioned matter involves a labor dispute between James J. Doyle and his employer, Southeastern Pennsylvania Transportation Authority (hereinafter "SEPTA").[1] James Doyle's wife, Joan E. Doyle, has joined in this action. Specifically, Plaintiffs are suing on the basis that Defendant failed to immediately reinstate Mr. Doyle's employment (namely, his position as Conductor) in accordance with an arbitration Award issued on March 15, 2008. Accordingly, they are seeking compensatory and consequential damages for the period between March 15, 2008 and Mr. Doyle's reinstatement on September 7, 2008.[2] Said damages include: reimbursement for lost wages, medical insurance benefits and retirement benefits; railroad credit; seniority; and, vacation time.

---

[1] The instant case was reassigned from the Honorable Mary A. McLaughlin to the undersigned on November 13, 2008.

[2] Plaintiffs mistakenly state in their Motion that "SEPTA did not reinstate [P]laintiff Doyle until September 7, 2009." (Doc. No. 31, ¶5)

1

A settlement conference was scheduled to occur before Magistrate Judge Lynne A. Sitarski on July 22, 2009, after the completion of discovery. However, said conference was canceled upon notification by the parties that they would be filing summary judgment motions and that a settlement conference would be futile. Thereafter, Plaintiffs filed the instant Motion for Summary Judgment on the basis of the arbitrators' decision and Defendant has filed a cross-motion on the basis of the same. For the reasons which follow, Plaintiffs' motion will be denied and Defendant's Motion will be granted in part and denied in part.

Plaintiffs initially filed their Complaint on September 5, 2008. Defendant filed an Answer on April 22, 2009, denying that they were required to reinstate Mr. Doyle to position of Conductor immediately in March of 2008.[3] (Answer ¶14.) Defendant averred that up until September 7, 2008, Defendant refused to reinstate Mr. Doyle because he failed to comply with the requisites for reinstatement, as set forth in the Public Law Board's Award. Defendant further averred that Mr. Doyle's ultimate reinstatement occurred pursuant to an August 1, 2008 grievance settlement agreement that was entered into between SEPTA and the union. (Answer ¶15.) Accordingly, Defendant contends in pertinent part that the August 1, 2008 agreement constitutes a waiver of any claims Mr. Doyle might have against SEPTA for an alleged failure to comply with the Public Law Board's Award.

---

[3] Defendant initially filed a Motion to Dismiss on September 26, 2008 (Doc. No. 3), which was later withdrawn without prejudice to their right to file a Motion for Summary Judgment at the close of discovery. (Doc. Nos. 15 & 16)

**II.     Factual Background**[4,5]

SEPTA employed Mr. Doyle as a Railroad Conductor on its Regional Rail Division until his termination on July 14, 2006. (Compl. ¶¶ 9-10.) At all times relevant to this dispute, a collective bargaining agreement between SEPTA and UTU, Local 61 governed the terms and conditions of Mr. Doyle's employment. (Compl. Ex. A, Sec. 101(a).) The SEPTA-UTU Agreement specifies that Local 61 is the "exclusive bargaining representative of all Passenger Conductors and Assistant Conductors in their jurisdiction working on SEPTA's Railroad Division." (Compl. Ex. A, Sec. 101(b).) The terms of the SEPTA-UTU Agreement expressly incorporate what are referred to as Operating Rules, which refer to the NORAC Operating Rules (Ninth Edition Effective April 6, 2008, published by Northeast Operating Rules Advisory Committee). (Compl. Ex. A, Sec. 510( c); *see also* Def.'s Cross Mot. Summ. J., Ex. C; Doyle Dep.10:18-25, 11:1-25, 12:1-9.) SEPTA applies the NORAC Operating Rules through a document entitled Timetable No. 4 and specifically through the System Special Instructions contained therein. (Spratt Dep. 22:1-24, 23:1-24, 24:1-22, 47:7-21; *see also* Def.'s Cross Mot. Summ. J., Ex. E; Vazquez Dep. 108:1-25, 109:1-24.) In 2005, Mr. Doyle began to receive

---

[4] As a procedural matter, Defendant correctly notes in its Cross Motion that Plaintiffs have failed to follow court procedures regarding their Statement of Undisputed Facts. Although Plaintiffs' initial Motion failed to specifically comply with said procedures, the defect is effectively remedied by their Response to Defendant's undisputed facts. It is within this Court's discretion to excuse this procedural deficiency and consider Plaintiffs' motion on the merits, which this Court has done. This Court further notes that as part of their Response to Defendant's Motion, Plaintiffs have added a "Counterstatement of Disputed and Undisputed Facts." To the extent any of these enumerated facts bear on dispositive material issues and are supported by the record - as reviewed by this Court *in toto* - said facts will be considered by the court in its disposition of the within Motions.

[5] Unless otherwise noted, the facts set forth herein are undisputed.

warnings from SEPTA for violations of its fare remittance rules. (Doyle Dep. 17:6-14.)[6] After numerous warnings regarding violations of these rules, SEPTA discharged Mr. Doyle on July 14, 2006. (Compl. ¶ 10; *see also* Doyle Dep. 21:17-19.)

Pursuant to the grievance procedures set forth in the Agreement, UTU Local 61 filed a grievance on Mr. Doyle's behalf over his discharge. (Doyle Dep. 28:15-25, 29:1-5.) Subsequent to the filing of the grievance, in December 2006, Mr. Doyle participated in a meeting with SEPTA management and UTU Local 61, in which SEPTA offered Mr. Doyle a settlement consisting of reinstatement, a month's salary, a fifth and final warning, and a requirement to attend psychiatric counseling. (Doyle Dep. 31:2-25, 32:16-25, 33:1-25.) Mr. Doyle declined to accept the settlement offer from SEPTA. (Doyle Dep. 33:24-25.) A second step grievance hearing was subsequently held, at which Local 61 represented Mr. Doyle. (Doyle Dep. 36:18-25.) The SEPTA Hearing Officer denied Mr. Doyle's grievance. (Doyle Dep. 37:5-25, 38:1-15.) The Union consequently appealed SEPTA's second step denial of Mr. Doyle's grievance to the Public Law Board ("PLB"). (Doyle Dep. 38:18-21; *see also* Compl. ¶ 12.) The Public Law Board ("PLB") is an arbitration mechanism which, under the RLA, may be established as an alternative to the statutory arbitration mechanism implemented through the National Railroad Adjustment Board ("NRAB"). *See* 45 U.S.C. § 153, First.

Ralph Vazquez, as General Chairman of Local 61, presented Mr. Doyle's case for reinstatement to the PLB. (Doyle Dep. 40:21-25, 41:1-14.) Mr. Doyle also testified at the PLB

---

[6] Defendant states that in 2004, Mr. Doyle began to receive warnings from SEPTA for violations of its fare remittance rules and in support of same, cites to page 17 of Mr. Doyle's deposition. Said portion of Mr. Doyle's deposition clearly indicates that he began receiving said warnings in December of 2005.

4

hearing, reading from a prepared statement that he had reviewed with the Union prior to the hearing. (Doyle Dep. 42:17-25, 43:1-7.) The executive board of the PLB held an executive session, during which SEPTA agreed to Mr. Doyle's reinstatement. (Sanderson Dep. 14:6-24, 15:1-24, 16:1-24, 17:1-24, 18:1-9.)

On March 15, 2008, the PLB issued its Award, which provided as follows:

> Claimant Doyle is to be reinstated immediately without back pay, but with all seniority intact. Carrier should attempt to expedite any administrative processes and refresher training associated with his reinstatement. The claim of the Union is sustained to this extent.
>
> N.B. This Board will retain jurisdiction over any future discipline assessed against this Claimant for like violations.

(Def.'s Cross Mot. Summ. J., Ex. H.) After receipt of his copy of the Award, Mr. Doyle discussed the award with Ralph Vazquez on numerous occasions. (Doyle Dep. 62:22-25, 63:1-10, 64:15-25, 65:1-25, 66:1-22.) On May 19, 2008, Mr. Doyle wrote to SEPTA General Manager Joe Casey, informing Mr. Casey that he asked UTU General Chairman Ralph Vazquez ". . . to seek out clarification from the arbitrator on what immediate reinstatement meant." Def.'s Cross Mot. Summ. J., Ex. F; *see also* Doyle Dep. 53:20-25, 54:7-25.)[7] Based on Mr. Vazquez's subsequent conversations with Mr. Giannino[8] - the neutral arbitrator who heard Mr. Doyle's case - Mr. Vazquez believed that if he pursued a clarification of the award on behalf of Mr. Doyle,

---

[7] Defendant states that Mr. Doyle sought clarification of what "refresher training" meant, as opposed to what "immediate reinstatement" meant. Both Ralph Vazquez's deposition testimony and the letter to Mr. Casey indicate that Mr. Doyle sought clarification of the term "immediate reinstatement."

[8] The neutral arbitrator's name is unclear from the submissions of both parties. In some documents, he is referred to as "Mel Giannino," while in others, he is referred to as "Mel Giannini." However, the signature on the Award appears to be "Giannino," therefore, for purposes of the instant Motions, this Court will refer to said arbitrator by same.

5

Mr. Giannino would tell them that Mr. Doyle had to be fully qualified on every line before he could return to work as a conductor. (Vazquez Dep. 56:8-25.)[9] Mr. Doyle understood that he must requalify on the physical characteristics on all runs in which he was previously qualified at the time he was terminated, in order to be reinstated as a conductor. (Doyle Dep. 68:3-13, 69:8-14.) In the meantime, Mr. Doyle underwent a physical examination, received his rule books, and attended rules classes, all of which were scheduled by SEPTA. (Doyle Dep. 44:21-25, 45:1-11, 82:1-10.) A Return-To-Work Certification was issued for Mr. Doyle on May 14, 2008. (Spratt Dep. 71:22-24, 72:1-18.)

As a result of a telephone call from Mr. Doyle, Mr. Casey instructed Sue Sanderson, SEPTA Labor Relations Manager, to permit Mr. Doyle to come back as an assistant conductor at the next general job picking, pending his recertification as a conductor. (Sanderson Dep. 35:13-19; *see also* Doyle Dep. 72:9-15; Compl. Ex. A, Sec. 503.)[10] The next picking at which Mr. Doyle could submit a bid for a run of his choosing (based on seniority) was not scheduled until August of 2008. (Doyle Dep. 70:15-17.) Thereafter, on August 1, 2008, the Union and SEPTA entered into an agreement with regard to Mr. Doyle's reinstatement. (Vazquez Dep. 94:23-25, 95:1-25, 96:1-3, 97:13-24; *see also* Def.'s Cross Mot. Summ. J., Ex. J.)[11] The Agreement

---

[9] Plaintiffs assert that Mr. Vazquez's interpretation of his personal conversations with Mr. Giannino constitute inadmissible hearsay. However, Mr. Vazquez's own statements regarding what he himself believed, are not being offered for the truth of the matter and are therefore not hearsay.

[10] Plaintiffs assert that a genuine issue as to material fact exists regarding the time frame within which Mr. Doyle would be permitted to return as an assistant conductor.

[11] Defendant characterizes the August 1, 2008 Agreement as a "Settlement Agreement." However, Plaintiff correctly points out that nowhere in the document, is the agreement referred to as a "settlement" agreement.

provided in pertinent part:

1. As an accommodation, pending his re-qualification as a Conductor, Mr. Doyle will be permitted to pick an Assistant Conductor run at the next scheduled picking, which is currently scheduled to begin August 7, 2008 and become effective September 7, 2008.

2. Once Mr. Doyle is reinstated to the rolls of the Authority, he must re-qualify as a Conductor by October 7, 2008. If Mr. Doyle fails to re-qualify as a Conductor by October 7, 2008, he will be dropped from the rolls of the Authority for lack of qualifications.

3. He is required to re-qualify on his own time and in doing so must complete all his assigned duties without jeopardizing his ability to complete an assignment due to a potential violation of the hours of service requirements.

4. The COBRA payments made by Mr. Doyle while he was terminated from the Authority will be reimbursed to him upon his return to work as soon as administratively feasible.

5. The terms and conditions of Mr. Doyle's reinstatement are final and binding. They are based solely upon the facts and circumstances of this particular case and do not establish any precedent. It will not be referred to by either party in any other grievance, special board of adjustment, or any other forum or proceeding except one involving Mr. Doyle.

(Def.'s Cross Mot. Summ. J., Ex. J.) At no point did Mr. Doyle instruct the Union to in any way cease to act on his behalf in connection with the effort to accelerate his reinstatement. (Doyle Dep. 93:10-25, 94:1.) Notwithstanding that the agreement provided for his reinstatement only as an Assistant Conductor, SEPTA reinstated Mr. Doyle as a Conductor on September 7, 2008. (Doyle Dep. 73:23-25, 74:1-7.) At the time of his reinstatement, Mr. Doyle had not completed qualifying on the physical characteristics of all the lines on which he had previously been qualified (Doyle Dep. 74:1-8.)

**III.    Discussion**

The standard for assessing a Motion for Summary Judgment is well-settled:

> A court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The Supreme Court has further ruled that a "genuine" issue exists if "the evidence is such that a reasonable jury could return a verdict for the non-moving party," and a factual dispute is "material" when it "might affect the outcome of the suit under the governing law."
>
> In considering a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." In a summary judgment motion, the moving party has the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. The party opposing the motion, however, cannot rely merely upon bare assertions, conclusory allegations, or suspicions to support its claim.

*Sentry Select Ins. Co. v. LBL Skysystems (U.S.A.), Inc.*, 486 F. Supp. 2d 496, 506 (E.D. Pa. 2007)(citations omitted).

Plaintiffs seek summary judgment on the basis that the term "immediate reinstatement" as found in the March 15, 2008 Award, is unambiguous and that SEPTA's failure to reinstate Mr. Doyle to position of Conductor until six months after the Award, constituted a violation of its obligation to reinstate him immediately, as a matter of law.  Defendant similarly seeks summary judgment, on the following bases: (1) the August 1, 2008 Agreement between the Union and SEPTA bounds Mr. Doyle and fully and finally settled all outstanding issues regarding Mr. Doyle's reinstatement; (2) the Public Law Board's Award of immediate reinstatement was conditioned upon satisfactory completion of "refresher training," which was required as a matter of law; and, (3) Mrs. Doyle has no standing to sue to enforce the Public Law Board Award.

8

With regard to Plaintiffs' Motion, a review of the record demonstrates that when read in context, the term "immediate reinstatement" meant reinstatement of Mr. Doyle's status of Conductor immediately upon completion of the mandatory refresher training and requalification.[12] These requirements are found in the applicable Collective Bargaining Agreement, SEPTA's Operating Rules, and within Federal Regulations. Moreover, the word "immediate" is expressly qualified by language in the arbitration Award immediately succeeding the portion cited by Plaintiffs, which states that "Carrier should attempt to expedite any administrative processes and refresher training associated with his reinstatement. The claim of the Union is sustained to this extent." (Def.'s Cross Mot. Summ. J., Ex. H.)[13] In fact, during Mr. Doyle's Deposition, he testified that Rule 940 of the NORAC Operating Rules require that Conductors be qualified on the physical characteristics of the territory over which they operate and that the System Special Instructions require that if a Conductor has not ridden in the head

---

[12] In support of their position regarding the meaning of "immediately," Plaintiffs cite to *United SteelWorkers of America v. Adbill Mgmt. Corp.,* 754 F.2d 138 (3d Cir. 1985). However, said case is clearly distinguishable, in that the language of the Award therein merely provided for reinstatement to their former employment without backpay and did not involve any qualifying language or certification requirements, such as the instant Award.

[13] With regard to collective bargaining agreement-proscribed arbitrations stemming from disputes between union members and their employer, it is well-settled that:

> "Where it is contemplated that the arbitrator will determine remedies for contract violations that he finds, courts have no authority to disagree with his honest judgment in that respect." Courts, therefore, are prohibited from second-guessing the arbitrator's fact-finding and contract interpretation "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority," rather than simply applying his own brand of industrial justice.

*United States Postal Service v. National Assoc. of Letter Carriers*, 839 F.2d 146, 149 (3d Cir. Pa. 1988)(citation omitted).

end of a particular train for a year or more, they must requalify. (Doyle Dep. 45:13-17, 46:19-23, 50:25, 51:1-18.) Mr. Doyle further testified that he was out for longer than a year prior to his reinstatement and that upon issuance of the Award, it was his understanding that in order to return to his position as Conductor, he would have to requalify on the physical characteristics of all portions previously held. (Doyle Dep. 68:3-11, 69:8-15.) As such, this Court cannot adopt Plaintiffs' proposed interpretation of "immediate" and judgment is not warranted on this basis.[14]

---

[14] Mr. Doyle testified that after he read the arbitration Award, he assumed he would be immediately reinstated as an Assistant Conductor, even though he held the position of Conductor at the time of his discharge and nobody ever told him he could come back as an Assistant Conductor. (Doyle Dep. 63:16-25, 64:1-2.) During a subsequent conversation with Mr. Vazquez, Mr. Vazquez reiterated to Mr. Doyle that he would have to begin qualifying on the physical characteristics for his reinstatement as Conductor. At that time, Mr. Doyle asked if he could be reinstated as an Assistant Conductor and was told that he could not. (Doyle Dep. 65:23-25, 66:1-19.) This Court is cognizant of the Affidavits prepared by Messrs. Don Mason, Mark Graziano and Thomas Dorricott in support of Plaintiffs' assertions that he should have been permitted to return to work immediately as an Assistant Conductor. However, the decision regarding whether or not to allow Mr. Doyle to return as an Assistant Conductor was within the sole discretion of SEPTA, pursuant to Appendix B of the Collective Bargaining Agreement, which provides in part that SEPTA has ". . . the right to establish and administer policies, procedures and standards of services, training, operations, and maintenance;" "to determine the number of employees and duties to be performed;" to maintain the efficiency of employees;" "to determine staffing patterns and areas worked;" and most importantly, "to determine the number, location and operation of divisions, departments and all other units of SEPTA, the assignment of work, the qualifications required, and the size and composition of the workforce," all in an effort "to attain and maintain full operating efficiency." (Compl. Ex. A, App. B.) In fact, during SEPTA Labor Relations Manager Susan Sanderson's deposition, she testified that the basis for her initial decision regarding Mr. Doyle's return to work as a Conductor, was that she ". . . wasn't going to set a precedent in any way" and that she didn't need Assistant Conductors; she needed Conductors. (Sanderson Dep. 27:19-22, 28:3-6.) Pursuant to the Collective Bargaining Agreement, it was within Ms. Sanderson's discretion to not permit Mr. Doyle to return as an Assistant Conductor and Mr. Doyle was similarly bound by this decision in accordance with the Agreement. Accordingly, the lengthy argument regarding same as set forth in Plaintiffs' Memorandum of Law Supporting Plaintiffs' Response to Defendant SEPTA's Motion for Summary Judgment, is without merit.

Turning now to Defendant's Motion, they first contend that the August 1, 2008 Agreement between the Union and SEPTA bounds Mr. Doyle and fully and finally settled all outstanding issues regarding Mr. Doyle's reinstatement. It is well-settled that:

> Because a union is authorized to act *as the exclusive bargaining agent for its members*, it has a duty to provide fair representation in the negotiation, administration, and enforcement of the collective bargaining agreement. A breach of that duty occurs when a union's conduct toward a member is "arbitrary, discriminatory, or in bad faith." The union must be accorded a "wide range of reasonableness" to enable it to perform effectively, but this discretion is subject to "good faith and honesty of purpose."

*Findley v. Jones Motor Freight, Div. Allegheny Corp.*, 639 F.2d 953, 957 (3d Cir. Pa. 1981)(emphasis added)(citations omitted). This Court preliminarily notes that Plaintiffs have not made any claims regarding the adequacy of the Union's representation throughout the underlying process. In fact, the record is replete with instances in which Union Representative Ralph Vazquez seemingly went above and beyond what would normally be expected of a person in his position under these circumstances. As will be discussed more fully hereinbelow, by facilitating the August 1, 2008 Agreement, Mr. Vazquez was able to secure a more beneficial outcome for Mr. Doyle than he had obtained through the binding arbitration Award.

In a case involving an informal settlement agreement reached between a union and employer on behalf of a union member just prior to commencement of arbitration proceedings, the court held that:

> Here the grievance machinery had been set in motion under the collective bargaining agreement and a hearing had begun when, at the suggestion of the arbitrator, settlement discussion was begun and successfully concluded. The important policy considerations which favor the early settlement of labor disputes without outside interference would be frustrated if settlement agreements reached in the grievance process were refused enforcement unless incorporated in a formal arbitrator's award. For if a final and binding settlement such as the one the union

> achieved here with the employer were not enforceable in the federal courts the incentive would be gone for early settlement after the grievance procedure had been set in motion. The union would be required to carry its controversy to the ultimate end of the grievance process or lose the right to enforcement in the federal courts.

*Amalgamated Meat Cutters & Butcher Workmen v. M. Feder & Co.*, 234 F. Supp. 564, 567 (E.D. Pa. 1964). Although the Agreement of August 1, 2008 at issue herein was reached after the arbitration, as opposed to before, the "important policy considerations" and need for finality referenced in *Amalgamated* are equally applicable.

The courts have noted the fact that "[i]t is black letter law that a labor union serves as the exclusive representative of its members in all matters related to hours, wages and terms and conditions of employment, particularly those set forth in a collective bargaining agreement." *Boysza v. Thompson*, 2005 U.S. Dist. LEXIS 22561, at **4-5 (W.D. Pa. Oct. 5, 2005). Moreover, ". . . unions are typically entitled to reach [ ] agreements **on behalf of their members, even over their members objections**." *Id.* at **13-14 (emphasis added)(citation omitted). As such, Plaintiffs' contention that the language of the August 1, 2008 Agreement which provided that "[t]he terms and conditions of Mr. Doyle's reinstatement are final and binding" did not constitute a waiver of his right to challenge the terms and conditions of reinstatement to the position of Conductor via proceedings in Federal Court, is unfounded and constitutes nothing more than an unsubstantiated exercise in semantics.

In another matter involving SEPTA, an employee took issue with a drug-testing provision contained within a settlement reached by his union on his behalf under a collective bargaining agreement. The court opined that:

> Here, Bolden's union, acting as his exclusive bargaining agent, pressed a

12

> grievance on his behalf and eventually entered into a voluntary settlement under which Bolden was to be reinstated with partial back pay on condition that he submit to future drug testing. In effect, the union and SEPTA agreed at that time that the collective bargaining agreement permitted future drug testing of Bolden in accordance with the settlement terms. *Thus, unless the union breached its duty of fair representation, this settlement had the same effect under labor law and under the Fourth Amendment as if Bolden himself had consented to such future drug testing.*

*Bolden v. Southeastern Pa. Transp. Auth.*, 953 F.2d 807, 829 (3d Cir. Pa. 1991)(emphasis added), *cert. denied*, 504 U.S. 943 (1992). This Court agrees with Defendant's comparison of *Bolden* with the instant case. Unlike the scenario in *Bolden,* the August 1, 2008 Agreement entered into on Mr. Doyle's behalf by and between the union and SEPTA and at issue in this case, did not contain any potential compromise of a constitutional right, such as waiver of an employee's constitutional right to be free from an unreasonable search and seizure in the form of drug testing. Yet, Plaintiffs maintain that the Agreement should not be enforced because Mr. Doyle never signed the document and was allegedly unaware of same until February of 2009.[15] Absent any allegation by Plaintiffs that the union breached its duty of fair representation to Mr. Doyle by entering into the agreement on his behalf, Plaintiffs' claim is unfounded. *See Michota v. Anheuser-Busch, Inc. (Budweiser)*, 755 F.2d 330, 335 (3d Cir. N.J. 1985)(noting that "[t]he ability of duly elected bargaining representatives to bargain effectively is dependent in part upon its ability to bind the employees it represents to the terms of a negotiated agreement."). In this case, Mr. Doyle testified that he was not unhappy or dissatisfied with the manner in which Mr. Vazquez had represented him before the Public Law Board. (Doyle Dep. 41:12-14.) He further

---

[15] Defendants refute this contention by accurately pointing out that said Agreement was attached to their Reply to Plaintiffs' Opposition to its Motion to Dismiss, which was filed in this case on October 16, 2008 - approximately four months before Mr. Doyle claims to have knowledge of the document. (Def.'s Mem. Supp. Cross Mot. Summ. J., n. 6.)

testified that aside from his allegation that he was not made aware of the August, 2008 letter until February of 2009, the Union did not do anything wrong in entering into the Agreement on his behalf. (Doyle Dep. 91:9-17.)[16] In fact, at no time prior to his reinstatement, did Mr. Doyle ever tell the Union to stop pursuing his case for reinstatement with SEPTA. (Doyle Dep. 93:24-25, 94:1.) Mr. Doyle repeatedly sought his union representative's assistance regarding his discharge and reinstatement, both before and after the arbitration. (Doyle Dep. 28:15-24, 31:2-21, 36:18-25, 66:17-22.) As such, it was not inconceivable that said representative, Mr. Vazquez, would continue to pursue the matter on Mr. Doyle's behalf. The fact that Mr. Doyle did not sign the Agreement that was ultimately reached is of no consequence, as he was bound by same regardless, pursuant to Article I of the Collective Bargaining Agreement. Moreover, as noted hereinabove, the Agreement benefitted Mr. Doyle to a greater extent than the original arbitration Award, which he understood to be binding.[17] Inasmuch as neither Plaintiffs' Complaint, nor their Motion for Summary Judgment, contains allegations that the union breached its duty of fair representation to Mr. Doyle, he is bound by the terms of same and Defendant's Motion for Summary Judgment will be granted on this issue.

---

[16] Mr. Doyle further testified that the provision of the Agreement which permitted him to come back as an Assistant Conductor "should have been done sooner." (Doyle Dep. 92:16-22.) However, as set forth hereinabove, his previous testimony confirms Mr. Doyle's understanding that the initial Award did not entitle him to come back as an Assistant Conductor at all.

[17] Rail Training Manager Terry Spratt testified that ". . . up until this case, [SEPTA] had never varied" from the requirements of Special Instruction C-S1, which required requalification on "all portions previously held." (Spratt Dep. 70:16-17.) Although Plaintiffs provide several Affidavits in support of their position that Mr. Doyle should have been immediately reinstated as an Assistant Conductor without having first requalified to assume his former position as Conductor, the facts and circumstances set forth in each of these Affidavits are distinguishable from the case at bar.

Next, Defendant seeks summary judgment on the basis that the Public Law Board's Award of immediate reinstatement was conditioned upon satisfactory completion of "refresher training," which was required as a matter of law. For the reasons set forth hereinabove, this Court similarly finds that no genuine issues of material fact exist regarding whether or not the Award of immediate reinstatement to the position Mr. Doyle held at the time of his dismissal - Conductor - was in fact conditioned upon satisfactory completion of refresher training. The document speaks for itself and as such, summary judgment is warranted on this basis.

Lastly, with regard to Defendant's claim that Mrs. Doyle has no standing to sue to enforce the Public Law Board Award, Plaintiffs have stated in their Response to Defendant's Motion for Summary Judgment, that Mrs. Doyle "has elected to withdraw as plaintiff in this case." (Doc. No. 37, p. 6) Accordingly, any issue of standing with regard to Mrs. Doyle is now moot.

## III. Conclusion

For the reasons set forth hereinabove, this Court finds that: (1) Plaintiffs' Motion for Summary Judgment on the basis that Defendant failed to "immediately" reinstate him to his former position of Conductor in accordance with the arbitration Award is denied; and (2) Defendant's Cross Motion for Summary Judgment is granted to the extent that the August 1, 2008 Agreement constituted a final and binding decision regarding Mr. Doyle's reinstatement to position of Conductor and that said reinstatement was conditioned upon satisfactory completion of "refresher training," but is denied as moot regarding Mrs. Doyle's lack of standing in this case.[18]

---

[18] This Court notes that other issues remain regarding Mr. Doyle's claims for retirement benefits, railroad credit, seniority, and vacation time. Inasmuch as neither party raised these issues in their Motions, this case shall proceed on said bases.

An appropriate Order follows.

BY THE COURT:

/s/ C. Darnell Jones, II      J.